## Hutcheson v. Hutcheson

*James A. Reilly,* for libellant.

*Anthony Cavalcante,* for respondent.

CARR, J., October 8, 1945.—This is an action for divorce from the bond of matrimony brought by the wife on the ground of desertion. The master reports

to us that the parties were married on March 21, 1943; that the desertion complained of was initiated on April 15, 1943; and that on April 27, 1943, the absent husband was inducted into the Army of the United States under the provisions of the Selective Training and Service Act of September 16, 1940, 54 Stat. at L. 885, 50 U. S. C. App. §301, et seq., as extended by the Service Extension Act of August 18, 1941, 55 Stat. at L. 626, 50 U. S. C. App. §351, et seq., from which he has not been discharged. The libel was filed on May 22, 1945, and on July 6, 1945, respondent caused a general appearance to be entered on his behalf, though he did not contest the action. The question involved is whether in computing the statutory period of absence required to entitle libellant to a divorce the duration of the respondent's military service should be excluded.

At the time of their marriage libellant and respondent were both under age and resided with their respective parents in this county. Not wishing their parents to know of their intentions, they ran away from home and were married at Oakland, Md. Returning immediately after the ceremony, they spent the night together at the home of a mutual friend. The next morning, after seeing and talking with his parents, he asked his wife to keep their marriage secret for the time being and to go back, meanwhile, to her own home. On April 15, 1943, he went to her there and told her that their marriage had been a mistake, that he was too young to be married, that he would never make a home for her or live with her, and that she could go her way and he would go his. Upon his induction into the Army a few days later, he certified to the authorities that he was single and without dependents, though subsequently, at the insistence of his wife's father, he made her an allotment. While home on his first furlough six weeks after his induction, he called

to see her but once and stayed not more than 15 minutes, telling her that his feelings had not changed, and that she could do whatever she pleased. On subsequent furloughs he ignored her entirely. He wrote to her only twice, addressing his letters to her in her maiden name. On September 22, 1943, she gave birth to a son, and when she wrote to him informing him that she had given the child his name, he requested her to change it. At the end of March 1945 the child was taken ill and died in the Uniontown Hospital on April 1, 1945. At that time respondent was at home with his parents on a furlough after 18 months in the Aleutian Islands, but did not make his presence known to his wife until he learned of the child's death. On the day of the funeral her parents inquired of him what his intentions were with respect to their daughter, and he replied, "I still feel that I'll never make a home, because I never had any intention and never expect to have any intention of making a home for her".

Our statute provides that it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony whenever it shall be adjudged that the other has "committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without reasonable cause, for and during the term and space of two years". Manifestly the induction of a deserting husband into the armed forces may put it beyond his power to return to his wife until he is released, and therefore it is clear that if the record disclosed nothing more than the respondent's abandonment of his wife and his induction within two years thereafter, his continued absence could not properly be adjudged voluntary. But in the face of the clear and convincing proof that has been made of his fixed intention to desert, steadfastly maintained to the present time, it would seem unreasonable to regard his failure to return as attributable to mili-

tary restraint. His attitude toward his wife was on every occasion so inflexible and insensitive to all entreaties that it is inconceivable that mere physical freedom could have altered it. Indeed, the evidence revealed that his furloughs afforded him repeated opportunities to resume matrimonial cohabitation and thereby terminate his desertion, all of which he obstinately rejected. Hence, we conclude that the continuity of his desertion was not interrupted by his involuntary military service, and accordingly a decree of divorce will be entered: Cf. Graham v. Graham, 299 Ky. 543, 186 S. W. (2d) 186; Margulies v. Margulies, 92 N. J. Eq. 332, 112 A. 484; Mack v. Mack, 32 Del. Co. 246; Dewell v. Dewell, 69 P. L. J. 384.